IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CSMN OPERATIONS LLC., CSMN OPERATIONS II LLC., and EDWARDS MEDICAL PROVIDER GROUP LLC.,

Plaintiffs,

vs.

AETNA LIFE INSURANCE COMPANY

Defendant,

---

**COMPLAINT**

---

Plaintiffs CSMN Operations LLC, CSMN Operations II LLC, and Edwards Medical Provider Group LLC, (collectively doing business under the trademarked name All Points North ("APN")) through their undersigned counsel, complain and allege against Defendant Aetna Life Insurance Company ("Aetna") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. CSMN Operations LLC. is a Colorado limited liability company which provides treatment services for APN in Edwards, Colorado, as well as clinical telehealth services across the country.
2. CSMN Operations II LLC. is a Colorado limited liability company which provides treatment services for APN's Aurora, Colorado substance use detoxification facility.

3. Edwards Medical Provider Group LLC. is a Colorado limited liability company which provides medical care for individuals in Colorado receiving APN services.
4. APN is the holder of assignments of benefits for each of the individuals who received mental health and substance use disorder treatment, whose claims have been wrongly denied by Aetna and are the subject of this lawsuit.
5. APN is the trade name of a set of affiliated entities that operate licensed and accredited treatment facilities for individuals struggling with addiction, trauma, and mental illness. APN is primarily based out of Colorado, and also offers telehealth services to individuals in certain markets.
6. Aetna is an insurance company headquartered in Connecticut and offered insurance and claims administration services to many of the individuals receiving treatment at APN.
7. Aetna denied coverage for at least forty-two individuals receiving treatment at APN who qualified for coverage under their respective insurance plans.
8. Some of these individuals were covered under self-funded insurance plans while others were covered under fully insured plans. All the plans at issue in this case were subject to the Employee Retirement Income Security Act of 1974 (“ERISA”).
9. Aetna’s stated justification for the denial in these claims was an alleged deficiency in submitted documentation. APN made numerous attempts to resubmit documentation and made multiple inquiries as to what materials were missing and what steps should be taken to correct the problem.
10. Despite these repeated good faith efforts by the APN team, Aetna continued to deny payment along the same lines, and refused to elaborate further. Aetna then informed APN

that all APN claims would be flagged for further review and would not be processed unless full medical records were physically mailed to Aetna with each of the claims.

11. Even after APN provided the information and documentation Aetna requested, Aetna maintained the denials of payment and, despite having all the documents and information necessary to process and pay the claims, continued to improperly assert that it was missing documentation and information necessary to evaluate the claims. Aetna continued to evade responses to APN's questions of what documentation was allegedly missing, or how it could correct such denials in the future.

12. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

13. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because the services were provided in Colorado and because Aetna does business in Colorado.

14. The remedies the Plaintiffs seek under the terms of ERISA and pursuant to 29 U.S.C. § 1132(a)(1)(B) are (i) for benefits owed to APN by Aetna for covered services rendered by APN to members receiving coverage under Aetna insured and administered plans, (ii) an order requiring Aetna to comply with its obligations under ERISA and enjoining Aetna from denying future claims against APN without complying with ERISA's claims procedure regulations, (iii) for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), (iv) as well as an award of prejudgment interest on each

individual claim, (v) and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

**BACKGROUND FACTS**

15. On December 14, 2022, APN received a letter from Aetna which cited "concerns with claims you submitted for reimbursement." The letter directed APN to attach the patients' complete charts along with their medical and social history and any daily treatment or progress notes with each reimbursement request. A copy of the December 14, 2022, letter is attached as **Exhibit A.**

16. The letter did not acknowledge that prior to the receipt of the December 14, 2022, letter, APN had repeatedly done just that, only to be repeatedly ignored by Aetna in every instance.

17. APN made numerous inquiries to Aetna to clarify what information was allegedly absent. However, at no time in this process did Aetna provide further information about which, if any, documentation was missing from any specific claim, nor did Aetna make any attempt to clarify how APN's previous attempts to produce documentation was deficient, if indeed it was in any way.

18. APN repeatedly contacted Aetna to obtain more information for why the claims were being denied. In email correspondence, Aetna offered varying justifications for denying payment. For instance, Aetna stated in emails that it would need to see qualifications for staff to verify whether treatment could be approved.

19. APN questioned Aetna as to why this had never been communicated in any actual denial correspondence and why if this was true, had Aetna only asked for medical records. APN

submitted the qualifications of its staff and was then told by Aetna that for APN to be taken off special review status, it would need to submit six months of "clean claims" with no identifiable issues.

20. When APN repeated that the denials it had received were for an alleged lack of clinical records and asked multiple times how its claims were not "clean," or how APN could correct any alleged deficiencies, Aetna refused to clarify why it was denying claims and directed APN to contact the appeals department and conduct an appeal for each of the denied claims, all while declining to elaborate on why the claims were denied in the first place.

21. Between December 2022 and September 2023, APN continued to serve patients insured under Aetna plans, without receiving anything more than nominal payment from Aetna.

22. In September, 2023, APN retained the services of the law office of Brian S. King P.C. ("Counsel") for assistance in appealing the various denials it had received from Aetna.

23. On October 26, 2023, Counsel sent a letter to David Erickson at the Aetna Special Investigations Unit regarding a series of denials for forty-two individuals who received care from APN in the prior months. Counsel wrote that APN had gone to great lengths to resolve the denial of payment for these individuals' medically necessary treatment, but APN's efforts had so far been fruitless. A copy of the October 26, 2023, letter is attached as **Exhibit B**.

24. Counsel stated that they were making one final attempt on APN's behalf to resolve these issues and exchange information and documents to resolve the problems with Aetna.

25. Counsel wrote that APN was a licensed residential mental health and addiction treatment center located in Edwards, Colorado and was accredited by The Joint Commission, as well as the Commission on Accreditation of Rehabilitation Facilities. Counsel stated that APN had well qualified and experienced staff members which included the former CEO of United Behavioral Health, and the former Deputy Director of the Office of National Drug Control Policy.
26. Counsel stated that in an assessment by the ACORN Collaboration, a nonprofit measuring clinical outcomes across three thousand providers, APN was found to be one of the top care providers available worldwide.
27. Counsel noted that despite this pedigree, Aetna repeatedly denied payment for individuals receiving services at APN. Counsel wrote that Aetna's primary pattern for denying payment was to claim that each patient was missing treatment records.
28. When APN responded by sending complete copies of the patients' medical records along with any other relevant documentation, Aetna maintained the denials on the same grounds, often repeating requests for records which APN had just produced.
29. Counsel stated that when APN attempted to resolve this issue and inform Aetna that it had already provided the necessary information, Aetna continued to deny payment on the same basis and continually evaded providing any concrete answers by employing "run-around" tactics such as asking APN to talk to yet another individual or another department in the company. APN's requests for clarification were repeatedly stonewalled and ignored.

30. Counsel contended that because Aetna's denials "are transparently without validity" and because it refused to respond to APN's repeated inquiries regarding what, if any, documentation was missing, Aetna had internally classified APN as a facility for which it would deny all claims regardless of validity.

31. Counsel pointed out that Aetna was a fiduciary under each and all the individual members' ERISA insurance plans and was required to act in that capacity for its members and to provide them with the benefits they were owed.

32. Counsel wrote that each of the claims had a payment denial which cited nearly identical reasons and disregarded any documentation provided to remedy the issue. In addition, counsel pointed out that in many cases, Aetna provided denial letters later than allowed by ERISA. Counsel asserted that Aetna systematically failed to comply with its ERISA obligations to perform a full, fair, and thorough review of each individual claim.

33. Counsel produced a table as a representative sample which summarized the denial process for ten of the forty-two individuals. The selected denial letters share a common theme of Aetna asserting that it lacked information needed to process the claim, such as the patient's complete chart, or daily treatment or progress notes.

34. Even after receiving this information, Aetna continued to assert that "[w]e do not have the information we need to consider this charge." Aetna then repeated that it was missing information such as the patient's complete chart and daily notes, even though APN had repeatedly produced those documents.

35. In some rare cases, Aetna expanded its denial rationale and included statements which did not reference missing documentation, such as, "[t]hese expenses require further

review" or an assertion that the services were not covered by the member's plan, or even that "these services were not provided." But in nearly all cases, Aetna simply reiterated that it did not have the required information, regardless of how many times such documentation had been previously provided.

36. Counsel stated that the total benefits amount for these forty-two patients constituted an amount greater than five and a half million dollars ($5,500,000).

37. Counsel reminded Aetna that it had clear and explicit obligations under ERISA to provide, among other things:

> (1) "(t)he specific reason or reasons for the adverse determination:"
> (2) "(r)eference to the specific plan provisions on which the determination is based:"
> (3) "(a) description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary:" and
> (4) for denials based on lack of medical necessity, "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances.

38. Counsel noted that Aetna was further required to:

> (1) "take(s) in account all comments, documents, records, and other information submitted by the claimant related to the claim:"
> (2) provide "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits(;)" and
> (3) in deciding an appeal based on medical necessity, demonstrate that the claims administrator "consult(ed) with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment."

39. Counsel contended that Aetna had failed to abide by these minimum obligations and had abused its discretion by applying "cursory and conclusory rationales for denial" in a way that systematically deprived its insureds receiving care at APN of the meaningful dialogue and full and fair review to which they were entitled.

40. Counsel wrote that APN was the only provider offering the level of services and treatment that many individuals with elevated mental health and substance use disorder treatment needs required.
41. Counsel contended that by artificially imposing limitations on treatment at APN, Aetna appeared to be imposing limitations on network adequacy for mental health care services in violation of MHPAEA.
42. To assess Aetna's level of MHPAEA compliance, Counsel asked Aetna to perform a parity analysis on each of the forty-two disputed plans, and also asked for documentation such as the summary plan description and governing plan documents for each respective plan so that Counsel could conduct their own MHPAEA compliance assessment.
43. Aetna ignored this request.
44. Counsel asked Aetna to disclose its true justification for denying claims at APN and stated that APN was unable to appeal any benefit denials effectively without this information.
45. Counsel expressed concern that the patients had their treatment at APN denied without "any sort of principled process" or compliance with minimum ERISA requirements.
46. Following this letter, APN informed Counsel that Aetna appeared to have removed APN's status of requiring special review for each claim submission.
47. Counsel then reached out to David Erickson at Aetna to confirm whether this was true, and if so when the hold was lifted. Counsel also asked for information concerning the claims for the forty-two individuals identified in the October 26, 2023, letter.

48. David Erickson stated that he would forward Counsel's request to Aetna's legal department for review. Counsel reached out again nine days later stating they had received no response from Aetna, and Mr. Erickson again replied by saying he would forward these communications to Aetna's legal department for review.

49. Counsel received no substantive response to their email or October 26, 2023, letter from the legal department or anyone else at Aetna.

50. APN has exhausted its pre-litigation appeal obligations under ERISA and the terms of the respective ERISA plans to obtain payment of the benefits owed under the terms of the respective ERISA plans for the forty-two patients.

**FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

51. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Aetna, acting as an agent of ERISA insurance plans for which it provides coverage and administrative services, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of those plans. 29 U.S.C. §1104(a)(1).

52. Aetna denied coverage for at least forty-two individuals receiving care at APN under the justification that various documentation was absent.

53. Even after this documentation was provided, in some cases on multiple occasions, Aetna upheld the denial of payment in violation of the express terms of the various insurance plans, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders and allow coverage for facilities

such as APN.

54. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

55. Aetna declined to engage in a meaningful dialogue and refused to explain or alter its justification for the denial of payment, even when it had no basis to deny on those grounds. Aetna ignored multiple attempts by APN, even after it engaged Counsel to assist, requesting that Aetna clarify its position. Aetna has refused to offer any indication that it intends to correct the claims which it has improperly denied.

56. Aetna breached its fiduciary duties to its insureds when it failed to comply with its obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in its members' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of denied claims.

57. By extension, Aetna's actions have caused significant monetary harm to APN by systematically withholding funds for services while obstinately refusing to justify its actions.

58. The actions of Aetna in failing to provide coverage for medically necessary treatment rendered at APN are a violation of Aetna's duties as insurer and third-party administrator of the various welfare benefit plans for which it offers, or purports to offer, coverage for treatment at APN.

**SECOND CAUSE OF ACTION**

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

59. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Aetna's fiduciary duties.

60. By extension, any individual receiving treatment at APN with an ERISA plan insured or administered by Aetna is also entitled to the protections MHPAEA provides.

61. MHPAEA requires Aetna to provide no less generous coverage for treatment of mental health and substance use disorders than it provides for treatment of medical/surgical disorders.

62. MHPAEA prohibits Aetna from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

63. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

64. Comparable benefits offered by Aetna for medical/surgical treatment analogous to the benefits offered at APN facilities include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

65. Aetna evaluated the claims for the forty-two patients for which APN holds assignments of benefits in violation of the terms of the respective ERISA plans and ERISA's claims procedure criteria.

66. Aetna has targeted APN claims for exclusion due to the cost of the services APN provides and to reduce the payments Aetna, either in its capacity as insurer or third-party administrator, makes for APN's services.

67. When Aetna receives claims for intermediate level treatment of medical and surgical conditions, it provides benefits and pays the claims as required by the terms of the insurance plans for which it provides coverage and in accordance with the claims procedure requirements of ERISA.

68. Aetna does not exclude payment for the medical services provided at licensed and accredited skilled nursing, inpatient rehabilitation, and inpatient hospice facilities without cause in the same way it has denied payment for the services at APN facilities.

69. This process resulted in a disparity because Aetna denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

70. In addition, without any factual or legal basis, Aetna informed APN that its facilities had been placed on special status requiring a heightened level of review for each and every claim submitted by participants and beneficiaries receiving services at APN facilities.

71. APN reached out to Aetna on several occasions and stated that it had provided all necessary information and documentation required by Aetna to obtain payment for the APN claims and inquired what, if any, additional information or documentation was necessary for Aetna to process the claims. Aetna was unwilling or unable to identify any actual deficiencies in the materials APN provided.

72. Aetna has put into place undisclosed requirements to restrict the availability of coverage for residential treatment care which it has used specifically to restrict the ability of its insureds to obtain coverage for mental health and substance use disorder treatment at APN facilities.

73. Counsel asked Aetna to provide it with evidence of any MHPAEA compliance analysis which had been done with respect to the relevant plans, Aetna refused or failed to do so. Counsel also asked Aetna to provide it with documentation for Counsel to conduct its own MHPAEA analysis. Aetna again refused or failed to do so.

74. Aetna does not restrict access to coverage or impose equivalent treatment limitations on coverage analogous medical/surgical treatment provided at skilled nursing, inpatient rehabilitation, and inpatient hospice facilities in violation of the terms of the relevant ERISA plan, nor does it deny comparable medical/surgical claims in a manner that violates ERISA's claims procedure requirements.

75. Aetna's actions also provide less coverage for participants and beneficiaries being treated for mental health and substance use disorders at APN than the coverage it provides for participants and beneficiaries being treated for medical and surgical conditions in

analogous levels of care such as treatment in skilled nursing, inpatient rehabilitation, and inpatient hospice facilities.

76. The effect of Aetna's action is to discriminate against coverage for residential treatment at APN facilities providing mental health and substance use disorder treatment and impose more restrictive treatment limitations for benefits than the coverage Aetna provides for comparable medical and surgical treatment.

77. In this manner, Aetna violates MHPAEA and its underlying regulation, 29 C.F.R. §2590.712(c)(4)(i), because it utilizes processes, strategies, evidentiary standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

78. The violations of MHPAEA by Aetna are breaches of fiduciary duty and give APN the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that Aetna's actions violate MHPAEA;

(b) An injunction ordering Aetna to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the Aetna's internal processes and practices to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by Aetna as a result of its violations of MHPAEA;

(e) An order requiring an accounting by Aetna of the funds wrongly withheld from ERISA participants and beneficiaries as a result of Aetna's violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring Aetna to provide payment to APN as make-whole relief for APN's losses;

(g) An order equitably estopping Aetna from denying APN's claims in violation of MHPAEA; and

(h) An order providing restitution from Aetna to APN for APN's losses arising out of the Aetna's violation of MHPAEA.

79. In addition, APN is entitled to an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for the treatment provided at APN to the participants and beneficiaries of the Aetna insured and administered ERISA welfare benefits plans for which APN holds assignments of benefits and for which Aetna has improperly denied coverage, plus pre and post-judgment interest to the date of payment for each claim improperly denied by Aetna;
2. An order enjoining Aetna from denying future claims at APN in the same wrongful manner;
3. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in APN's Second Cause of Action;
4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and
5. For such further relief as the Court deems just and proper.

DATED this 6th day of February, 2024.

*s/Sarah J. Baker*
Sarah J. Baker, #32806
SARAH J. BAKER PC
Post Office Box 4551
Eagle, Colorado 84631
Telephone: (970) 331-0799
sbaker@sbakerpc.com

s/ *Brian S. King*
Brian S. King, #4610
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com