**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-00368-NYW-RTG

CSMN OPERATIONS LLC,
CSMN OPERATIONS II LLC,
EDWARDS MEDICAL PROVIDER GROUP LLC, and
PATIENTS 1–42,

      Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY,
AGMA HEALTH FUND,
AMAZON.COM SERVICES LLC GROUP HEALTH AND WELFARE PLAN,
VERINT SYSTEMS INC. COMPREHENSIVE WELFARE BENEFIT PLAN PLAN,
VIRTU FINANCIAL OPERATING LLC HEALTH PLAN,
BOSTON CONSULTING GROUP, INC. WELFARE BENEFITS PLAN,
DELL INC. RETIREE MEDICAL PLAN,
CVS HEALTH WELFARE BENEFIT PLAN,
QUEST DIAGNOSISTICS GROUP WELFARE PLAN,
MASON TENDER'S DISTRICT COUNCIL WELFARE FUND PLAN,
ALASKACARE DEFINED BENEFIT PLAN,
GROUP MEDICAL BENEFITS FOR ACTIVE EMPLOYEES PLAN,
TRUIST FINANCIAL HEALTH PLAN,
BANK OF AMERICA GROUP BENEFIT PROGRAM PLAN,
HAVAS NORTH AMERICA WELFARE BENEFIT PLAN,
SYNEOS HEALTH EMPLOYEE WELFARE PLAN,
CSX CORPORATION MEDICAL, DENTAL, AND VISION PLAN,
APPLE INC. HEALTH AND WELFARE BENEFIT PLAN,
TELADOC HEALTH INC. HEALTH AND WELFARE BENEFIT PLAN,
IAC INC. HEALTH AND WELFARE BENEFIT PLAN,
DEUTSCHE BANK MEDICAL PLAN,
HOLTHOUSE CARLIN AND VAN TRIGT LLP WELFARE BENEFIT PLAN,
DELOITTE LLP GROUP INSURANCE PLAN,
SAP AMERICA HEALTH AND WELFARE PLAN,
STANFORD HEALTH CARE EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN,
CARVANA LLC HEALTH AND WELFARE PLAN, and
ALASKA ELECTRICAL HEALTH AND WELFARE PLAN,

      Defendants.

## ORDER ON MOTIONS TO DISMISS

This complex lawsuit concerns alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA").  *See generally* 29 U.S.C. §§ 1001–1461.  Plaintiffs are healthcare providers and patients who allege that Defendant Aetna Life Insurance Company ("Aetna") administered numerous employer-sponsored welfare benefit plans ("Plan Defendants") in a manner that systematically and unlawfully denied payment for mental health and substance abuse treatment and services.  Now pending before the Court are two motions to dismiss.  First, Aetna and all but seven of the Plan Defendants move to dismiss for failure to state a claim and improper joinder (the "Aetna Motion"). [Doc. 55].  Second, six of the seven[1] remaining Plan Defendants, led by Defendant Havas North America Welfare Benefit Plan ("Havas"), move to dismiss for substantially the same reasons (the "Havas Motion") (together with the Aetna Motion, the "Motions").  [Doc. 60]. Plaintiffs CSMN Operations LLC ("CSMN"), CSMN Operations II LLC ("CSMN II"), and the Edwards Medical Provider Group, LLC ("Edwards") (together, "Provider Plaintiffs")[2] have responded in opposition to the Motions.  [Doc. 65; Doc. 70]  Defendants have filed

---

[1] Defendant AlaskaCare Defined Benefit Plan ("AlaskaCare") does not join either Motion, and the claims related to Patient 17 and against AlaskaCare are not at issue in the Motions.  [Doc. 77 at 40 (Defendants indicating that issues related to Patient 17 are "Reserved")].

[2] It is unclear to what extent Patients 1–42 are involved in this litigation.  The Provider Plaintiffs sometimes omit the Patients from their definition of "Plaintiffs."  *See* [Doc. 30 at 2; Doc. 55 at 6].  For clarity and consistency, the Court will refer to Plaintiffs' briefing on the Motions as submitted by the Provider Plaintiffs.  The Court refers to the allegations in the Second Amended Complaint [Doc. 30] as made by "Plaintiffs."

a consolidated reply.  [Doc. 77].  The Court finds that oral argument would not materially assist in the disposition of the Motions.  As set forth below, the Aetna Motion is respectfully **GRANTED in part** and **DENIED in part**, and the Havas Motion is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The following facts are drawn from the operative Second Amended Complaint, [Doc. 30], and the Court presumes they are true for purposes of the Motion.  The Provider Plaintiffs "are affiliated entities and a part of a family of companies" that use the trade name All Points North ("APN").  [*Id.* at ¶ 1].  APN's companies "operate licensed and accredited treatment facilities for individuals struggling with addiction, trauma, and mental illness."  [*Id.*].  Patients 1–42 (or "Patients") are participants or beneficiaries in employee welfare benefit plans who received services from one or more Provider Plaintiffs.  [*Id.* at ¶¶ 5–6].  Many of the benefit plans were self-funded by the sponsoring employer and administered by Aetna.  [*Id.* at ¶¶ 9, 13–21, 23–38]; *see also* [Doc. 77 at 39–41 (Defendants' Appendix 1 summarizing patients, plan sponsors, and plan types)].[3]  Other plans were fully insured by Aetna, meaning that Aetna "acted as the insurer in a first party relationship" with the patient.  [Doc. 30 at ¶ 9]; *see, e.g.*, [*id.* at ¶¶ 51, 146, 160, 195; Doc. 77 at 39–41].

Regardless of the patient and plan, Plaintiffs allege that Aetna wrongly denied coverage for the treatments the Patients received from the Provider Plaintiffs.  [Doc. 30 at ¶ 10].  For each denial, Aetna asserted that the claim lacked sufficient supporting

---

[3] The Court cites to the Parties' filings using the page numbers assigned by the Court's Case Management / Electronic Case Files system.

documentation. [*Id.* at ¶ 40]. But when the Provider Plaintiffs attempted to provide the missing documents, Aetna continued to deny payment based on the purported lack of documentation. [*Id.* at ¶¶ 40–43]. And when the Provider Plaintiffs inquired as to what documents were missing, Aetna "refused to engage in a meaningful dialogue" about what the Provider Plaintiffs could do to perfect the claims. [*Id.*].

In Plaintiffs' view, Aetna's conduct adds up to "an alarming pattern of mass denials" across all Patients' claims. [*Id.* at ¶ 48]. They allege that Aetna has violated the respective ERISA plans, Aetna's fiduciary duties under ERISA, and other provisions of ERISA and the MHPAEA. [*Id.* at ¶ 49]. Plaintiffs further allege that "[o]ne or more" of the Provider Plaintiffs hold assignments of benefits authorizing them to sue on each Patient's behalf. [*Id.* at ¶ 5]. Plaintiffs thus bring two claims in this case. First, they assert a claim for recovery of benefits under ERISA ("Benefits Claim"), 29 U.S.C. § 1132(a)(1)(B), based on Aetna's alleged wrongful denials of benefits in breach of its fiduciary duties, [Doc. 30 at ¶¶ 610–17]; *see also* 29 U.S.C. § 1104(a)(1). Second, Plaintiffs bring a claim seeking equitable relief for violations of the MHPAEA ("MHPAEA Claim"), *see* 29 U.S.C. § 1132(a)(3), based on Aetna's failure to treat mental health treatments consistently with other types of treatments, [Doc. 30 at ¶¶ 618–37]; *see also* 29 U.S.C. § 1185a(a)(3)(A)(ii).

The Parties jointly stipulated to the dismissal of Patient 40 from this lawsuit. [Doc. 72; Doc. 73]. Defendants now seek dismissal of Plaintiffs' claims with respect to all remaining Patients other than Patient 17. *See* [Doc. 55; Doc. 60]; *see also supra* note 1.

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

**ANALYSIS**

The Court begins with the Parties' common ground.  The Aetna Motion argues that the claims related to Patients 38, 41, and 42 must be dismissed because these Patients are covered by plans are not subject to ERISA.  [Doc. 55 at 24–25]; *see also* [Doc. 77 at 11].  The Provider Plaintiffs concede that those plans "are not properly governed by ERISA," and "dismissal of Plaintiff Patients 38, 41, and 42 is appropriate at this time." [Doc. 65 at 36].  Accordingly, the Aetna Motion is respectfully **GRANTED** as to any claims related to Patients 38, 41, and 42, and those claims are **DISMISSED with prejudice**.

As for the disputed portion of the Motions, the Court starts with the Aetna Motion's argument that claims related to Patient 39 are moot.[4]  The Court then turns to the main

---

[4] Aetna argues that any claims related to Patients 39, 40, 41, and 42 are moot because

issue of whether the Patients validly assigned the right to bring this action to the Provider Plaintiffs, such that the Provider Plaintiffs possess statutory standing to sue under ERISA. The Court's statutory standing analysis also implicates the role of the Patients in this litigation, given that they are not named as plaintiffs in the Second Amended Complaint. The Court resolves this issue before addressing the Parties' arguments regarding joinder. In deciding the Motions, the Court analyzes related groups of Patients together as appropriate.

## I.    Mootness

A claim is moot when "it becomes impossible for a court to grant effective relief" and "a live controversy ceases to exist." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotation omitted). Relevant here, a claim may be mooted by "[a]ction by the defendant that simply accords all the relief demanded by the plaintiff." 13B Wright & Miller's Federal Practice & Procedure § 3533.2 (3d ed. May 2025 update). Although the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not yet addressed this issue in the ERISA context, other courts have held that a claim for benefits becomes moot when the benefits are "paid . . . in full." *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

The Provider Plaintiffs admit that Aetna has paid the benefits claimed for Patient 39. [Doc. 65 at 34]. They maintain, however, that the Benefits Claim should go forward as to Plaintiffs' requests for pre- and post-judgment interest and attorney's fees. [*Id.* at 34–35]. The Court respectfully agrees. In *Pakovich*, the Seventh Circuit held that an

---

Aetna has now "paid the full claims balance" for these Patients. *See* [Doc. 55 at 26 (quoting [Doc. 30 at ¶ 566])]. Given the dismissal of Patients 40, 41, and 42, Patient 39 is the only one of these Patients still present in this lawsuit.

ERISA plaintiff's request for attorney's fees on a benefits claim was not mooted by the payment of benefits. 653 F.3d at 492–93. The Seventh Circuit reasoned that courts should retain equitable jurisdiction over the fees request to prevent a scenario where "opportunistic plans could routinely delay deciding whether to pay benefit claims until participants and beneficiaries file suit, effectively requiring them to incur legal costs unrecoverable under [29 U.S.C. § 1132(g)] in order to receive benefits to which they are legally entitled." *Id.* at 493. Similarly, in a case relied on by both the Aetna Motion and the Provider Plaintiffs, a district court found that "a claim for attorneys' fees under ERISA is not rendered moot simply because the defendants agreed to reinstate benefits after the plaintiff filed suit." *Young v. Reliance Standard Life Ins. Co.*, No. 20-cv-00739-LY-SH, 2022 WL 1105752, at *9 (W.D. Tex. Apr. 13, 2022) (collecting cases), *report and recommendation adopted by* 2022 WL 2902836 (W.D. Tex. May 11, 2022). The *Young* court also held that payment of benefits does not moot a request for pre-judgment interest, because pre-judgment interest is available as "other appropriate equitable relief" under 29 U.S.C § 1132(a)(3)(B). *See id.* at *8 (quotation omitted and collecting cases); *see also Bethony v. Cont'l Cas. Co.*, No. 05-cv-00050-JP-DJS, 2007 WL 9729123, at *3 (D.N.M. Sept. 14, 2007) (finding that a claim for interest is not moot even after the payment of ERISA benefits after remand).

The Court finds these cases persuasive and concludes that the Benefits Claim as to Patient 39 remains live to the extent Plaintiffs seek attorney's fees and pre-judgment interest. If Plaintiffs prevail on the remaining portion of this claim, they are statutorily entitled to an award of post-judgment interest under 28 U.S.C. § 1961(a). *See Ark. River Power Auth. v. Babcock & Wilcox Co.*, No. 14-cv-00638-CMA-NYW, 2017 WL 3116286,

at *10 (D. Colo. July 21, 2017) ("[P]ost judgment interest is required on any money judgment in a civil case recovered in district court."); *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1277 n.8 (10th Cir. 1998) (reiterating that post-judgment interest applies to "entire award granted by the district court, including any prejudgment interest and costs"). Accordingly, the Aetna Motion is respectfully **GRANTED in part**, and the Benefits Claim as to Patient 39 is **DISMISSED without prejudice as moot** with respect to Plaintiffs' claim for payment of benefits.  The Aetna Motion is also respectfully **DENIED in part**, as the Benefits Claim as to Patient 39 survives to the extent Plaintiffs seek attorney's fees, pre-judgment interest, and post-judgment interest.

## II.    Statutory Standing

The bulk of the Parties' briefing deals with whether the Provider Plaintiffs possess statutory standing under ERISA to sue on behalf of the Patients.  ERISA authorizes civil suits "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). "Healthcare providers generally are not considered beneficiaries or participants under ERISA."  *Denv. Health & Hosp. Auth. v. Beverage Distribs. Co.*, 546 F. App'x 742, 745 (10th Cir. 2013) (cleaned up) (quoting *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301–02 (11th Cir. 2010)).  Thus, a provider lacks statutory standing unless it has a "written assignment of claims from a patient with standing to sue under ERISA."  *Id.*  If the assignment is valid, the assignee "has standing to assert whatever rights [the patient] possessed."  *Id.* (collecting cases).

The Parties tacitly agree that, as healthcare providers, the Provider Plaintiffs lack statutory standing to sue absent a valid assignment by the Patients.  *See, e.g.*, [Doc. 55

at 26–28; Doc. 65 at 15–17].  Rather, Defendants argue that the assignments of benefits ("AOBs") signed by the Patients are, for most Patients, invalidated by anti-assignment provisions in the respective plan documents.  [Doc. 55 at 28–34; Doc. 60 at 17–18]. Defendants further contend that even if assignments were permitted, the AOBs do not assign the right to bring the claims in this case to the Provider Plaintiffs, but instead to APN.  *See* [Doc. 55 at 34–39; Doc. 60 at 18–22].  The Provider Plaintiffs counter that, for the Patients who purchased fully insured plans directly from Aetna, Colorado law requires Aetna to permit an assignment of benefits.  [Doc. 65 at 25–27].  More generally, the Provider Plaintiffs argue that Aetna waived any anti-assignment provisions through its conduct, and the AOBs encompass all Provider Plaintiffs and claims.[5]  *See* [*id.* at 17–25; Doc. 70 at 15–23].

### A.    Whether the Anti-Assignment Provisions Are Unambiguous

The Tenth Circuit has interpreted ERISA as "leaving the assignability of benefits to the free negotiations and agreement of the contracting parties."  *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995). Consistent with *St. Francis* and the weight of out-of-circuit authority, district courts within the Tenth Circuit have held that unambiguous anti-assignment provisions are valid and enforceable.  *See Classic Air Care, LLC v. Aetna Life Ins. Co.*, No. 2:20-cv-00506-TC, 2021 WL 199286, at *4 (D. Utah Jan. 20, 2021) (citing *Physicians Multispecialty Grp. v.*

---

[5] In assessing these arguments, the Court considers the AOBs and plan documents attached to the Motions because they are referenced in the Second Amended Complaint, central to Plaintiffs' claims, and undisputedly authentic.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Regarding the second requirement, these documents are central to Plaintiffs' claims because the validity and scope of the AOBs determine whether the Provider Plaintiffs have statutory standing, and the plan documents determine whether Plaintiffs are entitled to benefits in the first place.

*Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004)) (further

citation omitted); *Bland v. ExxonMobil Med. Plan*, No. 17-cv-03040-RM-GPG, 2018 WL

3729506, at *5 (D. Colo. Aug. 6, 2018) (citing *Am. Orthopedic & Sports Med. v. Indep.*

*Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)), *recommendation adopted by*

2018 WL 11618492 (D. Colo. Sept. 14, 2018).

Defendants argue in both Motions that certain groups of Patients' plans contain

enforceable anti-assignment provisions that deprive the Provider Plaintiffs of statutory

standing.  [Doc. 55 at 28–34; Doc. 60 at 16–18].  The Provider Plaintiffs protest that the

applicability of the anti-assignment provisions is an "improper merits determination[]"

cannot be decided at the motion-to-dismiss stage.  [Doc. 65 at 7; Doc. 70 at 6].  That may

be true if the contract at issue is ambiguous.  *See McAuliffe v. Vail Corp.*, 69 F.4th 1130,

1143 (10th Cir. 2023) ("[A]mbiguous contract language may not be resolved in a motion

to dismiss." (quotation omitted)).   But when the relevant contract provision is

unambiguous, a court may enforce that provision under Rule 12(b)(6) if it renders the

plaintiff's claim implausible.  *Park Rise Homeowners Ass'n v. HDI Glob. Specialty SE*, No.

19-cv-01268-DME-NRN, 2021 WL 9956621, at *4 (D. Colo. June 2, 2021) (collecting

cases); *see also Bland*, 2018 WL 3729506, at *6 (recommending dismissal of provider's

ERISA claim based on anti-assignment provision).  The Court thus considers whether the

anti-assignment provisions asserted by Defendants are unambiguous.

First, the Aetna Motion argues that any AOBs executed by Patients 1, 3–5, 9–10,

12–14, 16, 18–25, 28, 31, 34, 36–37, and 39[6] are voided by anti-assignment provisions

---

[6] The Aetna Motion also asserts that Patient 7's plan contained an anti-assignment
provision.  [Doc. 55 at 30–31].  But the excerpts of the plan submitted with the Aetna
Motion do not contain an anti-assignment provision.  *See* [Doc. 55-7 at 12–21].  The Court

in their respective plans.  [Doc. 55 at 28–34].  The Provider Plaintiffs do not argue that any of these provisions are ambiguous.  *See* [Doc. 65].  Nevertheless, the Court addresses each anti-assignment provision in turn.

Regarding Patients 1, 23, and 39—who were directly insured by Aetna—their plans state that

> You cannot assign any benefits under this Certificate to any person, corporation or other organization.  You cannot assign any monies due under this Certificate to any person, corporation or other organization unless it is an assignment to Your Provider for a surprise bill or to a Hospital for Emergency Services, including inpatient services following Emergency Department Care.

[Doc. 55-1 at 34; Doc. 56-2 at 17; Doc. 56-18 at 5]; *see also* [Doc. 30 at ¶¶ 51, 350, 567]. Plaintiffs do not allege that these Patients sought to assign benefits to the Provider Plaintiffs for a surprise bill or emergency care.  *See generally* [Doc. 30].  Accordingly, the Court agrees with Defendants that this anti-assignment provision is unambiguous.  [Doc. 55 at 29].

The anti-assignment provisions for Patients 3, 5, and 22 are substantially similar. Patients 3 and 5 were covered by Defendant Amazon.com Services LLC Group Health & Welfare Plan.  [Doc. 30 at ¶¶ 83, 109].  Their plan states that "Coverage and your rights under this Plan may not be assigned."  [Doc. 55-3 at 21; Doc. 55-5 at 21].  Patient 22 was covered by Defendant CSX Corporation Medical, Dental, and Vision Plan.  [Doc. 30 at ¶ 336].  The anti-assignment provision in Patient 22's plan states, "Coverage and your rights under this Plan may not be assigned.  A direction to pay a provider is not an

_____

thus cannot evaluate whether the provision, if any, is unambiguous.  The Aetna Motion is respectfully **DENIED without prejudice** as to any ERISA benefits claim related to Patient 7.

assignment of any right under this Plan or of any legal or equitable right to institute any court proceeding." [Doc. 56-1 at 18]. The Court finds that this language unambiguously prevents assignment. *See Bland*, 2018 WL 3729506, at *6 (concluding that anti-assignment provision stating that plan participants "may not" assign their benefits precluded providers from asserting ERISA standing as an assignee).

Patient 10 was covered by Defendant CVS Health Welfare Benefits Plan. [Doc. 30 at ¶ 171]. Like the previous plans, that plan states that "Aetna will not accept an assignment or transfer of rights." [Doc. 55-10 at 26]. And "[a]ny attempt to assign, transfer, anticipate, alienate, sell, pledge, encumber, charge, levy upon or otherwise dispose of any rights, benefits, or causes of action under the HSP shall be void and unenforceable." [*Id.*]. The Court agrees that this provision unambiguously prevents assignment.

Patient 18 was covered by Defendant Group Medical Benefits for Active Employees Plan. [Doc. 30 at ¶ 282]. That plan provides that:

> [N]o interest in or benefit under the Plan, or right to bring a claim or legal suit for benefits under the Plan or for breach or violation of any obligation or duty owed to a Covered Person under the Plan or ERISA or other federal or state law or regulation, is subject in any manner to any . . . assignment . . ., and any such action by a Covered Person to . . . assign . . . the same is void and has no effect."

[Doc. 55-18 at 27]. The provision explicitly clarifies that no "medical provider or other assignee of a Covered Person" may bring "any claim or suit against the Plan under ERISA[,] . . . and any attempt to enforce such an assignment will be void and unenforceable." [*Id.*]. The Court agrees that this provision unambiguously prohibits assignment.

Patient 20 was covered by Defendant Bank of America Group Benefits Program. [Doc. 30 at ¶ 305]. Patient 20's plan stated that assignment to a healthcare provider would not be accepted "for any reason" without "written consent of the claims administrator." [Doc. 55-20 at 27]. Plaintiffs do not allege that they obtained Aetna's consent to an assignment. This Court thus concurs with the United States District Court for the District of Utah's decision in *Classic Air Care* that this anti-assignment provision unambiguously prohibits assignments. 2021 WL 199286, at *4 (concluding that anti-assignment provision that read, "To the extent allowed by law, Aetna will not accept an assignment to an out-of-network provider" was unambiguous (citing *McCulloch Orthopaedic Surgical Servs. v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017))).

Patient 24 was covered by Defendant Apple Inc. Health and Welfare Benefit Plan. [Doc. 30 at ¶ 366]. That plan contains two anti-assignment provisions. The first provision states, "You cannot assign any rights, benefits or monies due under the plan to any person, corporation, or organization. . . . No benefit under the plan shall be subject in any way to assignment . . . and any attempt to accomplish the same shall be void." [Doc. 56-3 at 3–4]. Similarly, the second provision states that "you cannot transfer or assign to anyone else your right to receive plan benefits, or any rights you may have." [*Id.* at 7]. The Court finds that both anti-assignment provisions are unambiguous.

Patient 28 was covered by Defendant Deutsche Bank Medical Plan. [Doc. 30 at ¶ 431]. Patient 28's plan states that "you do not have the right to assign . . . any benefits under these Plans to which you are entitled." [Doc. 56-7 at 15]. The anti-assignment provision explains that both assignments of benefits and assignments of legal rights or causes of action are prohibited. [*Id.*]. "Any attempt to assign, in whole or in part, such

rights or any benefits shall be void and unenforceable under all circumstances." [*Id.*].
The Court agrees that this provision unambiguously prohibits assignment.

The largest group of Patients covered by the Aetna Motion—and all of the Patients
covered by the Havas Motion—participated in plans with the same anti-assignment
provision.  For the Aetna Motion, this includes Patients 4, 9, 12–14, 16, 19, 21, 25, 31,
34, 36, and 37.  [Doc. 55 at 30].  The Havas Motion covers Patients 2, 6, 26, 27, 33, and
the 2023 plan for Patient 29.  [Doc. 60 at 17–18].  The provision states, "To the extent
allowed by law, we will not accept an assignment to an out-of-network provider."  [Doc.
55-4 at 16; Doc. 55-9 at 22; Doc. 55-12 at 22; Doc. 55-13 at 22; Doc. 55-14 at 16; Doc.
55-16 at 19; Doc. 55-19 at 16; Doc. 55-21 at 17; Doc. 56-4 at 31; Doc. 56-10 at 27; Doc.
56-13 at 13; Doc. 56-15 at 16; Doc. 56-16 at 16].  During 2022, Patient 9's anti-assignment
provision contained nearly identical language prohibiting assignment to an out-of-network
provider but indicated that assignment could be permitted if Aetna "agreed . . . in writing."
*See* [Doc. 55-9 at 17].

Defendants argue that this Court should follow the district court's decision in
*Classic Air Care* and hold that this language is "an unambiguous and enforceable anti-
assignment clause."  [Doc. 55 at 30 (citing *Classic Air Care*, 2021 WL 199286, at *4); Doc.
60 at 17–18 (same)].  True, *Classic Air Care* involved nearly identical anti-assignment
language.  2021 WL 199286, at *4.  But Defendants ignore that this language expressly
limits itself to prohibiting assignments to out-of-network providers.  That limitation was not
at issue in *Classic Air Care* because the provider plaintiff specifically alleged that it was
"out-of-network."  *Id.* at *2.  Here, however, the Second Amended Complaint does not say
whether the Provider Plaintiffs were in- or out-of-network for the Patients.  *See* [Doc. 30].

Defendants claim that two of the three Provider Plaintiffs are out-of-network but do not support this assertion with a citation to the Second Amended Complaint or any of the relevant plan documents.  [Doc. 55 at 40; Doc. 60 at 24].  At the motion-to-dismiss stage, the Court must confine its analysis to the "four corners of the complaint" and any properly considered documents.  *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282, 1286 n.1 (10th Cir. 2019).  Thus, viewing the factual allegations in the light most favorable to Plaintiffs, the Court cannot conclude that the unambiguous language of this anti-assignment provision renders Plaintiffs' claims implausible.  *See Park Rise Homeowner's Ass'n*, 2021 WL 9956621, at *4.  Accordingly, the Aetna Motion is respectfully **DENIED** insofar as Defendants contend that the Provider Plaintiffs cannot bring claims related to Patients 4, 7, 9, 12–14, 16, 19, 21, 25, 31, 34, 36, and 37 due to an anti-assignment provision.  The Havas Motion is respectfully **DENIED** on that same basis as to Patients 2, 6, 26, 27, 29, and 33.

However, the Court concludes that the anti-assignment provisions in the plans for Patients 1, 3, 5, 10, 18, 20, 22–24, 28, and 39 are unambiguous.  These provisions will thus be enforceable against any AOBs unless Plaintiffs have plausibly alleged that either Colorado law precludes their enforcement or Aetna has waived its ability to assert the anti-assignment provisions.

## B. Whether Colorado Law Overrides Anti-Assignment Provisions in Fully Insured Plans

Of the patients with unambiguously applicable anti-assignment provisions, Patients 1, 23, and 39 were covered by plans fully insured by Aetna.  *See* [Doc. 30 at ¶¶ 51, 350, 567].  The Provider Plaintiffs argue that applicable Colorado law "require[s] insurers to both allow and honor assignments to providers."  [Doc. 65 at 25].   They

specifically invoke Colo. Rev. Stat. § 10-16-106.7(1)(a) (or the "provider-assignment law"), which provides that "[a]ny carrier that provides health coverage to a covered person shall allow, but not require, such covered person under the policy to assign, in writing, payments due under the policy to a licensed hospital or other licensed health-care provider." *See* [Doc. 65 at 26 & n.91]. Defendants do not address or dispute this point. *See* [Doc. 77].

The Tenth Circuit has held that, in general, "ERISA preempts state law on the issue of the assignability of benefits." *St. Francis*, 49 F.3d at 1464. But *St. Francis* did not address whether a state statute dealing with assignability could fall within ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A). Section 1144(b)(2)(A) carves out "any law of any State which regulates insurance" from ERISA's otherwise sweeping preemption of state law. *See* § 1144(a). Nearly a decade after *St. Francis* was decided, the Supreme Court defined a two-pronged test for determining whether a state law is one that "regulates insurance" for purposes of ERISA's savings clause. *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42 (2003). "First, the state law must be specifically directed toward entities engaged in insurance." *Id.* at 342. "Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.*

Colorado's provider-assignment law satisfies both *Miller* prongs. First, it is specifically directed at entities engaged in insurance. *Id.* at 334. The provider-assignment law targets "[a]ny carrier that provides health coverage" and requires those carriers to, as a matter of practice, give effect to a covered person's assignment of

benefits to a provider.   § 10-16-106.7(1)(a).[7]   Subsequent provisions flesh out how carriers, covered persons, and providers must handle payments in connection with an assignment.   *See* § 10-16-106.7(1)(b), (2).   Colorado has thus regulated insurers "with respect to their insurance practices."   *Miller*, 538 U.S. at 334 (quotation omitted).

Second, Colorado's provider-assignment law substantially affects the risk-pooling arrangement between insurers and insureds.   For one, the law "alter[s] the scope of permissible bargains between insurers and insureds."   *Id.* at 338–39.   Under the provider-assignment law, insurers cannot—as Aetna seeks to do here—enforce a blanket anti-assignment provision that forbid insureds from assigning their right to receive benefits payments to a provider.   *See La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 542, 545 (5th Cir. 2006) (Owen, J., concurring) (construing similar Louisiana law as "prohibiting anti-assignment agreements" and thus affecting risk-pooling arrangement).   Nor could an insured accept such a provision in exchange for a lower premium.   *See Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1149 (10th Cir. 2009) (first citing *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840, 844–45 (9th Cir. 2009); and then citing *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 606–07 (6th Cir. 2009)).   And by requiring insurers to pay benefits to assigned providers, notwithstanding any anti-assignment provision, the provider-assignment law "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed."   *Miller*, 538 U.S. at 339 n.3.

---

[7] Colorado law defines "carrier" broadly to include "any entity that provides health coverage" in Colorado.   *See* § 10-16-102(8).   Even if this definition sweeps up some entities that are not insurance companies, the Supreme Court emphasized in *Miller* that ERISA's savings clause protects laws which regulate "*insurance*," not "insurance *companies*."   538 U.S. at 336 n.1.

Indeed, the facts of this case exemplify why Colorado's law substantially affects the risk-pooling arrangement.  When insureds are permitted to invite providers, via assignment, into their contractual arrangements with insurers, providers also gain the right to sue to obtain the assigned benefits.  *See infra* Part II.D.  And, as here, providers may be more likely than individual insureds to pursue litigation over perceived wrongful denials of coverage.  "[S]uch litigation may lead to a greater number of claims being paid, thus increasing the benefit of risk pooling for consumers."  *See Shafer v. Metro. Life Ins. Co.*, 80 F. Supp. 3d 1244, 1254 (D. Colo. 2015) (citations omitted) (concluding that Colorado law substantially affected risk pooling by guaranteeing de novo judicial review of an insurer's decision to deny a benefits claim, because insurers could no longer bargain for a more deferential standard of review).

Accordingly, the Court concludes that Colorado's provider-assignment law meets both *Miller* prongs and falls within ERISA's savings clause.  Colorado's law thus applies to the fully insured plans for Patients 1, 23, and 39 and requires Aetna to honor those Patients' AOBs, regardless of any anti-assignment provisions.  The Aetna Motion is respectfully **DENIED** as to Patients 1, 23, and 39.

C.    **Whether Aetna Waived the Anti-Assignment Provisions**

For the remaining Patients—Patients 3, 5, 10, 18, 20, 22, 24, and 28—the Court considers whether Aetna waived its right to enforce the anti-assignment provisions in the respective plans.  The Provider Plaintiffs contend that Aetna waived these provisions through its conduct by communicating with and paying the Provider Plaintiffs without acknowledging the existence of the anti-assignment provisions.  [Doc. 65 at 20–21].

In evaluating this argument, the Court assumes without deciding that waiver is available as a defense to an anti-assignment provision in an ERISA plan.[8]  The Court also assumes that federal common law controls its analysis.  Courts generally treat waiver of an anti-assignment provision as a question of federal common law.  *See id.*; *Beverly Oaks Physicians' Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440–41 (9th Cir. 2020) (evaluating waiver under federal case law without reference to state law); *cf. Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 117 (S.D.N.Y. 2016) (reiterating, in case involving asserted waiver of an anti-assignment provision, that "[t]he validity of assignments for ERISA purposes is a question of federal common law" (cleaned

---

[8] As Defendants point out, the Tenth Circuit has held that plaintiffs cannot bring promissory estoppel claims under ERISA for "purported informal written modifications to an employee benefit plan."  *Miller v. Coastal Corp.*, 978 F.2d 622, 624–25 (10th Cir. 1992); [Doc. 77 at 16–17].  But the Supreme Court has more recently suggested that a plan administrator's conduct may trigger "waiver or estoppel" to prevent the administrator from raising a particular plan provision as a defense to an action to recover benefits under 29 U.S.C. § 1132(a).  *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 114 (2013).  And despite *Coastal Corp.*'s declaration that "an estoppel claim is not available under ERISA," 978 F.2d at 625, the Tenth Circuit has since recognized that claims for equitable estoppel are viable under ERISA's equitable relief provision, 29 U.S.C. § 1132(a)(3), *see Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1187 (10th Cir. 2016).  While the Tenth Circuit has not addressed the precise issue of whether waiver is available in ERISA actions, the majority of courts to reach this question have recognized some form of waiver in the ERISA context.  *See, e.g.*, *Am. Orthopedic*, 890 F.3d at 454; *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 281 (5th Cir. 2019); *Beverly Oaks Physicians' Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440 (9th Cir. 2020).  *But see Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) (describing waiver as a "prohibited concept[]" in ERISA actions).  The Court, however, does not reach whether *Coastal Corp.*'s reasoning can be reconciled with these authorities, because the Court agrees with Defendants that Plaintiffs fail to plausibly allege waiver.  *See Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021) (finding that plaintiff insufficiently pled waiver while leaving open the question of whether waiver applies at all in ERISA context); *cf. Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 925–26 (M.D. Tenn. 2013) (declining to apply Sixth Circuit authority holding that *estoppel* cannot be used to alter an ERISA plan and finding, for purposes of motion to dismiss, that plaintiff plausibly alleged *waiver* of anti-assignment provision).

up)).  Even where an ERISA plan contains a choice of law provision, courts have looked

to federal case law for guidance in applying the chosen state's waiver doctrine.  *Am.*

*Orthopedic*, 890 F.3d at 454 & n.8; *Kevin Feder, M.D., Inc. v. U.S. Bancorp*, No. 24-cv-

04236-LMP-SGE, 2025 WL 1371891, at *3–4 & n.2 (D. Minn. May 12, 2025).  The Parties

have identified no such choice of law provision in the ERISA plans at issue in this case.[9]

And, in any case, the Court discerns no relevant difference between Colorado's waiver

doctrine and the federal common law addressing waiver in the ERISA context.  *Compare,*

*e.g.*, *Avicanna Inc. v. Mewhinney*, 487 P.3d 1110, 1115 (Colo. App. 2019) ("Waiver is the

intentional relinquishment of a known right."), *with Beverly Oaks*, 983 F.3d at 440 (same),

*and Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021)

(same).

        As with any contractual right, the waiver of an anti-assignment provision must be

intentional.  *See, e.g.*, *Beverly Oaks*, 983 F.3d at 440; *Merrick*, 175 F. Supp. 3d at 122.

Intent to waive the provision may be implied from a plan administrator's conduct, such as

when a "party's acts are so inconsistent with an intent to enforce the [contractual] right as

to induce a reasonable belief that such right has been relinquished."  *Beverley Oaks*, 983

---

[9] Defendants also assert that the Court should apply a Colorado pleading standard that, in their view, requires Plaintiffs to expressly plead waiver in anticipation of Defendants' assertion of the anti-assignment provision.  *See* [Doc. 77 at 18 (citing *Divine v. George*, 166 P. 242, 244 (Colo. 1917))].  The Court respectfully disagrees.  Rule 8(a) of the Federal Rules of Civil Procedure, along with the case law interpreting it, supplies the pleading standard for plaintiffs in federal court.  *E.g.*, *Iqbal*, 556 U.S. at 677–680.  And it is well settled that, in federal court, "[c]omplaints need not anticipate or attempt to defuse potential defenses."  *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)); *cf. Beverly Oaks*, 983 F.3d at 441 ("[A]n anti-assignment provision is a litigation defense." (cleaned up)).  The Court thus focuses its inquiry on whether Plaintiffs have alleged facts that plausibly show Aetna waived the anti-assignment provision.

F.3d at 440 (quotation omitted).  But courts have taken different approaches to what constitutes implied waiver.  The United States Court of Appeals for the Ninth Circuit has held that a plan administrator waives an anti-assignment provision by failing to assert the provision and paying an assignee when the administrator "was aware or should have been aware[] during the administrative claim process that [a provider] was acting as its patients' assignee."  *Id*. (brackets omitted).  The Third Circuit has explained that because waiver requires "a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it," a plan administrator does not waive an anti-assignment provision through "routine processing of a claim, issuing payment . . . , and summarily denying the informal appeal."  *Am. Orthopedic*, 890 F.3d at 454 (quotation omitted).  *American Orthopedic* is consistent with the trend of district court decisions recognizing that payment to an assignee and "routine processing of a claim or appeal" does not effect waiver of an anti-assignment provision.  *See, e.g.*, *Kevin Feder*, 2025 WL 1371891, at *3 (quotation omitted) (collecting cases).

The Provider Plaintiffs suggest that Aetna's failure to assert the anti-assignment provisions in their communications with the Provider Plaintiffs, combined with payment for some Patients, amounts to waiver.  [Doc. 65 at 20–22].  To support this claim, they cite the Ninth Circuit's decision in *Beverly Oaks* for the proposition that "silence and payment" constitutes waiver.  [*Id*. at 22].  The Court agrees with Defendants, however, that *Beverly Oaks* does not hold that silence plus payment, standing alone, suffices to show waiver.  *See* [Doc. 77 at 23].  Rather, *Beverly Oaks* specifically relied on the allegation that the provider submitted a claim form "indicating that it was pursuing plan benefits through a patient assignment."  983 F.3d at 441.  Thus, the plaintiff had plausibly

alleged waiver because the plan administrator received notice of the assignment and *then* paid the assignee without asserting the anti-assignment provision. *Id.*

Unlike *Beverly Oaks*, Plaintiffs fail to allege that Aetna had similar notice of the Patients' assignments. With respect to the relevant Patients—Patients 3, 5, 10, 18, 20, 22, 24, and 28—Plaintiffs do not allege that the Provider Plaintiffs identified themselves to Aetna as assignees until October 26, 2023. [Doc. 30 at ¶ 582; Doc. 30-2 at 1, 17]. By then, Aetna had already processed the claims related to these Patients and either denied or taken no action on their appeals. *See, e.g.*, [Doc. 30 at ¶¶ 85–90 (Patient 3); *id.* at ¶¶ 173–76 (Patient 10)]. Plaintiffs do not assert that their prior communications with Aetna would have placed Aetna on constructive notice that the Provider Plaintiffs were acting as assignees. As alleged, the communications involved only routine claim processing, appeals, and other "ministerial conduct." *See Podiatric OR of Midtown Manhattan, P.C. v. UnitedHealth Grp., Inc.*, No. 15-cv-03234-DSD-HB, 2016 WL 126362, at *3 (D. Minn. Jan. 11, 2016) (holding that plan administrator's "routine conduct with providers such as remitting payment and sending correspondence" does not amount to waiver); *see also, e.g.*, [Doc. 30 at ¶¶ 85–92 (detailing claim submission, appeal, and follow-up communications regarding Patient 3); *id.* at ¶¶ 174–79 (same for Patient 10); *id.* at ¶¶ 369–72 (same for Patient 24)]. For the relevant Patients who did not receive payments—Patients 3, 10, and 24—the Court concludes that Plaintiffs have failed to adequately allege waiver based on Aetna's failure to assert the anti-assignment provision in its routine communications with the Provider Plaintiffs. The unambiguous anti-assignment provisions for these Patients are therefore enforceable. The Aetna Motion is

respectfully **GRANTED** as to the Provider Plaintiffs' claims related to Patients 3, 10, and 24, and these claims are **DISMISSED without prejudice**.

The Court reaches the same conclusion for the remaining Patients who received payments—Patients 5, 18, 20, 22, and 28.  There is no meaningful difference in the allegations about the Provider Plaintiffs' communications with Aetna regarding these Patients.  *See, e.g.*, [*id.* at ¶¶ 112–21 (alleging routine claim processing, appeal, and follow-up communications regarding Patient 5)].  Plaintiffs do allege that Aetna paid out some of the claims related to these Patients.  *See* [*id.* at ¶¶ 123, 294, 319, 349, 439].  But Plaintiffs do not specify what date these payments were made, only that Aetna has paid certain claims "as of" May or July 2024.  *See* [*id.*].

The date of payment is critical, because the waiver analysis likely turns on whether Aetna made payments to the Provider Plaintiffs before or after receiving the October 26, 2023 demand letter from the Provider Plaintiffs' counsel that identified the Provider Plaintiffs as the Patients' assignees.  *See* [Doc. 30-2 at 16–17].  If Aetna reversed a coverage determination in response to the demand letter and then made payments to the Provider Plaintiffs without raising the anti-assignment provision, Aetna's conduct may be sufficiently inconsistent with the anti-assignment provision to plausibly demonstrate waiver.  *See Beverly Oaks*, 983 F.3d at 441.  But if Aetna merely made routine payments to the Provider Plaintiffs before the letter and without notice of the assignment, that is insufficient to waive the anti-assignment provision.  *Am. Orthopedic*, 890 F.3d at 454; *see also, e.g.*, *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-cv-06551-TPG, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct payments to healthcare providers without

waiving anti-assignment provisions."). Without specific factual allegations that Aetna made payments after the October 26, 2023 letter, the Court can only speculate as to whether Aetna had notice of the assignment at the time of the payments. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Thus, even viewing the allegations in the light most favorable to Plaintiffs, the Court cannot reasonably infer that waiver is plausible as opposed to merely possible. *See Iqbal*, 556 U.S. at 678. The Motion is respectfully **GRANTED** as to the Provider Plaintiffs' claims related to Patients 5, 18, 20, 22, and 28, and these claims are **DISMISSED without prejudice**.

### D. Whether the AOBs Encompass All Provider Plaintiffs and Claims

At this point, the Court has concluded that the anti-assignment provisions do not unambiguously bar the Provider Plaintiffs from asserting ERISA standing as assignees of Patients 1, 4, 7, 9, 12–14, 16, 19, 21, 23, 25, 31, 34, 36, 37, and 39 (Aetna Motion) and Patients 2, 6, 26–27, 33, and Patient 29 in 2023 (Havas Motion). Moreover, the respective plans for Patients 8, 11, 15, 30, 32, 35, and Patient 29 in 2022 had no anti-assignment provision at all. For these Patients, the Court considers whether the respective AOBs grant the Provider Plaintiffs standing to sue as assignees. In undertaking this analysis, the Court notes that all relevant Patients other than Patients 27 and 39 signed the same AOB form.[10] The Court refers to these Patients as the "AOB Patients." For Patients 27

---

[10] *See* [Doc. 55-1 at 2; Doc. 55-4 at 2; Doc. 55-7 at 2; Doc. 55-8 at 2; Doc. 55-9 at 2; Doc. 55-11 at 2; Doc. 55-12 at 2; Doc. 55-13 at 2; Doc. 55-14 at 2; Doc. 55-15 at 2; Doc. 55-16 at 2; Doc. 55-19 at 2; Doc. 55-21 at 2; Doc. 56-2 at 2; Doc. 56-4 at 2; Doc. 56-9 at 2; Doc. 56-10 at 2; Doc. 56-11 at 2; Doc. 56-13 at 2; Doc. 56-14 at 2; Doc. 56-15 at 2; Doc. 56-16 at 2; Doc. 60-1 at 2; Doc. 60-2 at 2; Doc. 60-3 at 2; Doc. 60-4 at 2; Doc. 60-5 at 2; Doc. 60-6 at 2]. Patient 16 also signed a subsequent AOB that Plaintiff's do not dispute was "substantially identical" to the prior AOB. [Doc. 65 at 8 n.5; Doc. 55-16 at 5]. To the

and 39, no AOB was submitted, so the Court relies on the factual allegations in the Second Amended Complaint. *See* [Doc. 30 at ¶¶ 424, 568].

Defendants attack the AOBs on three fronts. First, they argue that the AOBs that assign the Patients' benefits to "APN" does not include all Provider Plaintiffs because the "APN" trade name refers only to CSMN. [Doc. 55 at 28, 41 & n.17; Doc. 60 at 16]. Second, they contend that the assignments do not authorize the Provider Plaintiffs to sue, [Doc. 77 at 28], let alone assert a MHPAEA claim that does not seek recovery of benefits, [Doc. 55 at 37–38; Doc. 60 at 21–22]. Third, to the extent the AOBs grant the Provider Plaintiffs rights as "authorized representatives," Defendants argue that the Provider Plaintiffs lack ERISA standing as authorized representatives. [Doc. 55 at 35–37; Doc. 60 at 19–21; Doc. 77 at 27–28 & n.9, 33–34].

Defendants' first argument asks the Court to determine whether the AOBs cover all three Provider Plaintiffs or only CSMN. In relevant part, the AOBs provide that each Patient "assign[s] directly to Provider all of my rights in and to the Benefits, including the right to bill for, collect, and retain all payment associated with the Benefits for services rendered to me by Provider." *E.g.*, [Doc. 55-1 at 2]. The AOBs define "Provider" as "All Points North Lodge." [*Id.*]. But there is no dispute that "All Points North Lodge" is a trade name used by the Provider Plaintiffs, not a legal entity of its own. *See, e.g.*, [Doc. 30 at ¶¶ 1–2; Doc. 55 at 28]; *see also Herman v. PBIA & Co.*, No. 19-cv-00584-RMR-GPG,

---

extent Patient 16's second AOB listed "All Points North Lodge, LLC" as the assignee, rather than "All Points North Lodge," the Court agrees with the Provider Plaintiffs that this was a mere "scrivener's error" that does not negate the assignment to APN. [Doc. 65 at 8 n.5]; *see also Rooftop Restoration & Exteriors, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 20-cv-01632-DDD-TPO, 2025 WL 306807, at *4–6 (D. Colo. Jan. 27, 2025) (applying Colorado law and reforming contract to correct scrivener's error based on failure to use "precise legal name" of relevant entity).

2023 WL 2824318, at *2 (D. Colo. Jan. 23, 2023) (collecting cases).  Defendants argue that because the APN trade name is registered only to CSMN, the Court should find that the AOBs assign the Patients' claims only to CSMN.  [Doc. 55 at 41 & n.17].[11]  The Provider Plaintiffs respond that they have alleged that all Provider Plaintiffs used the APN trade name, so an assignment to APN amounts to an assignment to all "the entities who use the d/b/a."  [Doc. 65 at 18].

The Court respectfully agrees with Defendants.  As alleged, the APN trade name only applies to the legal entity of CSMN Operations LLC, even if other Provider Plaintiffs sometimes use it.  *See* [Doc. 30 at ¶¶ 2–4].  Plaintiffs provide no support for their assertion that a trade name registered to one entity may grow to legally encompass other entities who use the trade name.  *See Flatiron Paving Co. v. Wilkin*, 725 P.2d 103, 106 (Colo. App. 1986) (observing that a trade name alone has no legal capacity or status to contract).  Thus, any "circumstantial evidence" suggesting that other entities use the APN trade name is immaterial to the unambiguous AOB language assigning benefits to the legal entity underlying the trade name.  *Cf. Innova Hosp. San Antonio LP v. Health Care Serv. Corp.*, No. 3:12-cv-01607-O, 2019 WL 13177034, at *4 (N.D. Tex. Oct. 2, 2019) (holding that assignment to legal entity and its trade name meant that assignment pertained only to the legal entity, regardless of whether circumstantial evidence would show that, in practice, trade name also referred to plaintiff).  By assigning their benefits to APN, the

---

[11] The Second Amended Complaint suggests that the APN trade name is formally associated with only CSMN Operations LLC.  [Doc. 30 at ¶¶ 2–4].  The Court takes judicial notice of information on the Colorado Secretary of State's website that corroborates this allegation.  *See Cont'l Credit Corp. v. Garcia*, No. 15-cv-01251-NYW, 2016 WL 614475, at *6 (D. Colo. Feb. 16, 2016) (taking judicial notice, pursuant to Fed. R. Evid. 201(b)(2) and in Rule 12(b)(6) context, of parties' corporate identities based on registrations with Colorado Secretary of State).

AOB Patients assigned those benefits only to CSMN.  The Motions are accordingly **GRANTED** insofar as they seek dismissal of the Benefits and MHPAEA Claims to the extent CSMN II and Edwards assert these claims on behalf of the AOB Patients.[12]  For Patients 27 and 39, however, the Court takes as true the allegations these Patients assigned their benefits payments to all three Provider Plaintiffs.  [Doc. 30 at ¶¶ 424, 568]. The Motions are respectfully **DENIED** insofar as Defendants contend Patients 27 and 39 did not assign their benefits to CSMN II and Edwards.  To the extent CSMN II and Edwards assert the Benefits and MHPAEA Claims on behalf of Patients 27 and 39, these claims **SURVIVE**.

Defendants' second argument comprises two separate points.  First, they contend that the assignment portion of the AOBs grants APN the right to receive payments without assigning the right to "pursue litigation as assignee."  [Doc. 77 at 28].  Defendants are correct that the "Assignment of Benefits" section of the AOBs assigns the right to receive benefits payments without expressly granting the right to sue.  *See, e.g.*, [Doc. 55-1 at 2]. The Tenth Circuit has not yet addressed whether an ERISA participant's assignment of the right to receive payments implicitly also assigns the right to sue for those payments. But the clear weight of out-of-circuit authority holds that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under [29 U.S.C. § 1132(a)]."  *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016) (quotation omitted) (collecting cases and observing a "broad consensus" on this point); *see also S. Coast Specialty Surgery Ctr., Inc. v. Blue*

---

[12] To be clear, the AOB Patients are Patients 1, 4, 7–9, 11–16, 19, 21, 23, 25, 30–32, and 34–37 (Aetna Motion) and Patients 2, 6, 26, 29, and 33 (Havas Motion).

*Cross of Cal.*, 90 F.4th 953, 961 (9th Cir. 2024) (reaching same conclusion and citing *Brown* with approval). The Court concurs with these decisions and concludes that the AOBs' assignment of benefits payments to APN included the right to sue to obtain those payments. The Motions are respectfully **DENIED** insofar as Defendants contend that CSMN lacks standing as an assignee to assert the Benefits Claim as to the AOB Patients.

Defendants further argue that, even if the AOBs include the right to assert the Benefits Claim, they do not assign the right to bring the MHPAEA Claim. [Doc. 55 at 37–39; Doc. 60 at 21–22]. The Court respectfully agrees. The assignment provision of the AOBs grants CSMN only a Patient's "rights in and to the Benefits." *E.g.*, [Doc. 55-1 at 2]. There is no indication that this provision assigns the Patients' other statutory rights under ERISA. And the Court cannot find an assignment unless "the intent to make the assignment" is "apparent." *Phoenix Cap., Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (quotation omitted)[13]; *see also* Restatement (Second) of Contracts § 324 (A.L.I. 1981, Oct. 2024 update) ("It is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person . . . ."). Based on the unambiguous language of the AOBs, the Court concludes that the AOB Patients did not assign the right to assert the MHPAEA Claim to CSMN. *See IHC Health Servs. v. Eureka Casino Hotel Health Plan*, No. 2:19-cv-00721-JNP-DBP, 2020 WL 5732217, at *1, *3 (D. Utah Sept. 24, 2020) (holding that an "assignment of benefits provision" did not assign

---

[13] "Courts consider general contract and assignability principles under state law even in the ERISA context." *CSMN Operations LLC v. Rocky Mountain Hosp. & Med. Serv.*, No. 24-cv-00536-RMR-KAS, 2025 WL 2093226, at *4 n.3 (D. Colo. Feb. 19, 2025) (citations omitted), *recommendation adopted by* 2025 WL 2093210 (D. Colo. Mar. 7, 2025); *see also Merrick*, 175 F. Supp. 3d at 118 ("Courts . . . may draw inspiration from state law in discerning the content of federal common law." (quotation omitted)).

the right to bring a claim for "statutory penalties for failure to provide plan information . . . under 29 U.S.C. § 1132(c)(1)")."  This conclusion extends to Patients 27 and 39, because Plaintiffs allege that these Patients only assigned "payment of any insurance benefits." [Doc. 30 at ¶¶ 424, 568].

Notwithstanding the text of the assignment provision, the Provider Plaintiffs insist that the "Authorized Representative" provision of the AOBs includes the right to assert the MHPAEA Claim.  [Doc. 65 at 18].  That provision appoints APN as each Patient's "Authorized Representative" and authorizes the "Insurer to assign and transfer any and all applicable plan Benefits and rights to Provider."  *E.g.*, [Doc. 55-1 at 2].  The AOBs state that "[t]his authorization includes any and all other rights permissible under ERISA, state and or federal laws, as well as entitled plan programs related to the Benefits."  [*Id.*].

The Court respectfully agrees with Defendants' third argument that the Authorized Representative provision does not rescue CSMN's statutory standing to assert the MHPAEA claim.  *See* [Doc. 77 at 33–34].  True, ERISA's implementing regulations permit authorized representatives to pursue internal appeals on a beneficiary's behalf.  *See* 29 C.F.R. § 2560.503-1(b)(4).  But courts have repeatedly rejected the argument that an authorized representation is equivalent to an assignment and thus confers ERISA standing.  *See, e.g.*, *OU Med., Inc. v. W.H. Braum Grp. Health Benefit Plan*, No. 21-cv-00067-J, 2021 WL 6101885, at *2 (W.D. Okla. May 4, 2021) ("Appointment as an authorized representative is not a written assignment of claims." (citing *Denv. Health*, 546 F. App'x at 745)); *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 671 F. Supp. 3d 888, 892 (N.D. Ill. 2023) ("[A]n authorized representative is merely someone authorized to vindicate another's right to benefits, and representing an ERISA

beneficiary does not make a provider an ERISA beneficiary itself entitled to sue." (quotation omitted)); *Windmill Wellness Ranch L.L.C. v. Meritain Health, Inc.*, No. SA-20-cv-01388-XR, 2021 WL 2635845, at *5 (W.D. Tex. June 25, 2021) (collecting cases). And even if the Provider Plaintiffs are correct that the Authorized Representative provision allows a Patient's insurer to assign the Patient's MHPAEA rights, there is no allegation that any such assignment occurred. *See generally* [Doc. 30]. Accordingly, the Motions are respectfully **GRANTED** as to the Provider Plaintiffs' MHPAEA Claim for the AOB Patients and Patients 27 and 39.

### III.    Real Parties in Interest

Although the Court has dismissed various claims by the Provider Plaintiffs, these claims may avoid complete dismissal to the extent they are asserted by the Patients. The Second Amended Complaint lists "Patients 1–42" as parties to this lawsuit in the caption. *See* [Doc. 30 at 1–2]. But it does not identify the Patients by name. In fact, the Second Amended Complaint and the Response to the Aetna Motion omit the Patients in their definition of "Plaintiffs." *See* [*id.* at 2; Doc. 65 at 6]. It is thus unclear whether the Patients are participating in this litigation at all. Nevertheless, the Provider Plaintiffs suggest that because "the Patients themselves are Plaintiffs as well," the Benefits and MHPAEA Claims should survive even if the Provider Plaintiffs lack standing. [Doc. 70 at 15]. Defendants reply that the phrase "Patients 1–42" in the case caption does not make these Patients parties to the suit. [Doc. 77 at 37].

Even if the Patients are involved in this litigation, Plaintiffs' failure to identify them in the Second Amended Complaint violates the Federal Rules of Civil Procedure. "[T]he Federal Rules of Civil Procedure mandate that the real names of all real parties in interest

must be used in complaints." *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) (citing Fed. R. Civ. P. 10(a), 17(a)). Rule 10(a) requires a complaint to "name all the parties." And Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Having concluded that the anti-assignment provisions deprive the Provider Plaintiffs of statutory standing to assert any claim for Patients 3, 5, 10, 18, 20, 22, 24, and 28, the Court concludes that these Patients are the real parties in interest for their respective Benefits and MHPAEA Claims. Similarly, because CSMN lacks statutory standing to assert an MHPAEA claim with respect to the AOB Patients and Patients 27 and 39, these Patients are the real parties in interest for their MHPAEA claims. Plaintiffs' failure to properly name these Patients as the real parties in interest renders those Patients' claims defective.

Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." "The district court's decision whether to join or substitute a party as a 'real party in interest' under Fed. R. Civ. P. 17(a) is reviewed for an abuse of discretion." *Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004).

In its discretion, the Court finds that the most efficient way to extend the relevant Patients an opportunity to join, ratify, or substitute into this case is to dismiss, without prejudice and with leave to amend, any claims for which these Patients are the real parties in interest. Unless and until Plaintiffs file a Third Amended Complaint that includes these Patients as real parties in interest, the action will continue as to the portion of the Benefits Claim that one or more Provider Plaintiffs have statutory standing to assert.

Accordingly, the Benefits and MHPAEA Claims are **DISMISSED without prejudice** and **with leave to amend** as to Patients 3, 5, 10, 18, 20, 22, 24, and 28.  The MHPAEA Claim is **DISMISSED without prejudice** and **with leave to amend** as to Patients 1, 2, 4, 6–9, 11–16, 19, 21, 23, 25–27, 29–37, and 39 (i.e., the AOB Patients and Patients 27 and 39).[14]  On or before **September 23, 2025**, Plaintiffs **MAY FILE** a Third Amended Complaint in which some or all of these Patients join, ratify, or substitute into this action.

## IV.    Misjoinder

Finally, Defendants argue that the Court should "dismiss Plaintiffs' claims pursuant to Rules 20 and 21" because the claims related to each Patient turn on different plans, contracts, and factual and legal issues.  [Doc. 55 at 40–43; Doc. 60 at 23–26].  Permissive joinder is governed by Rule 20(a).  *See* Fed. R. Civ. P. 20(a)(1).  Under Rule 20(a)(1), joinder of plaintiffs is proper if (1) the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all plaintiffs will arise in the action."  Moreover, the Supreme Court has advised that "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  Courts accordingly construe Rule 20(a) "liberally to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits."  *BKGTH Prods., LLC v. Does*, No. 13-cv-01778-WYD-MEH,

---

[14] Because the real parties in interest to the MHPAEA Claim are not yet present in this lawsuit, the Court does not reach the arguments regarding the plausibility of this claim. *See, e.g.*, [Doc. 55 at 43–45].

2014 WL 36648, at *5 (D. Colo. Jan. 6, 2014) (quotation omitted); *accord DIRECTV, Inc.*
*v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004).

As an initial matter, the Motions are **DENIED** to the extent Defendants seek
dismissal based on misjoinder alone.  Rule 21 provides that "[m]isjoinder of parties is not
a ground for dismissing an action."  To the extent Defendants seek something less than
complete dismissal, the Court finds that Plaintiffs satisfy the requirements of Rule 20(a).

### A.      Same Transaction or Series of Transactions

The Court agrees with the Provider Plaintiffs that their claims arise out of the same
transaction or series of transactions.  "'Transaction' is a word of flexible meaning.  It may
comprehend a series of many occurrences, depending not so much upon the
immediateness of their connection as upon their logical relationship."  *DIRECTV*, 220
F.R.D. at 631 (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).
Here, Plaintiffs' claims arise out of requests for coverage based on similar treatments at
one or more of the same Provider Plaintiffs, subject to similar denials by the same plan
administrator, Aetna.  *See generally* [Doc. 30].  Plaintiffs allege that Aetna's repeated and
wrongful denials of coverage for mental health treatment is part of the same "pattern" of
unlawful conduct.  [*Id.* at ¶¶ 40–43, 48–49].  In other words, Plaintiffs' claims will require
the Court to evaluate the same "systematic behavior" by Aetna in denying coverage for
the Patients' mental health treatments.  *See Almont Ambulatory Surgery Ctr., LLC v.*
*UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1188 (C.D. Cal. 2015) (finding benefits
claims related to 400 separate plans arose out of the same series of transactions because
each claim was "part of the larger systematic behavior" by the same plan administrator).
The Court finds that this establishes a sufficient logical relationship among the claims to

render them part of the same series of transactions under the broad meaning of Rule 20(a)(1).

Defendants' principal case, *Aetna v. Aaron*, is thus inapposite. *See* No. 1:18-cv-00631-DRC, 2022 WL 2834767 (S.D. Ohio July 19, 2022); [Doc. 55 at 42; Doc. 60 at 25]. In *Aaron*, the district court found that the plaintiffs failed to satisfy Rule 20 where the claims against ERISA plans and plan administrators arose from "surgeries and claims approvals for different patients, at different times, under different insurance plans." 2022 WL 2834767, at *3. The similarity among the claims arose from unnecessary surgeries performed by the same doctor, who was not a party to the case. *Id.* The various defendants merely approved the surgeries. *Id.* at *1. Unlike this case, then, *Aaron* did not involve an alleged unlawful pattern of conduct by the same defendant. And even if *Aaron* were on point, another district judge's decision is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). The Court accordingly concludes that Plaintiffs have satisfied the first requirement for joinder under Rule 20(a)(1)(A).

**B.    Common Question of Law or Fact**

The Court likewise finds that at least one common question of law or fact will arise in this case. Fed. R. Civ. P. 20(a)(1)(B). As explained above, Plaintiffs' claims ask the Court to evaluate the same pattern of conduct by Aetna. And as the instant Motions demonstrate, there may be considerable overlap in the Court's analysis of the relevant plans, AOBs, and other forms for each Patient. This commonality satisfies the second requirement for permissive joinder. The Court further observes that, given the similarities between the claims for each Patient, preserving the claims as a single action promotes

judicial economy.[15]  *See BKGTH Prods., LLC*, 2014 WL 36648, at *5.  Accordingly, the

Motions are respectfully **DENIED** to the extent they seek severance or dismissal of

individual Patients or Plan Defendants.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    The Aetna Motion [Doc. 55] is **GRANTED in part** and **DENIED in part** as

set forth above;

(2)    The Havas Motion [Doc. 60] is **GRANTED in part** and **DENIED in part** as

set forth above;

(3)    The Benefits and MHPAEA Claims related to Patients 38, 41, and 42 are

**DISMISSED with prejudice**;

(4)    The Benefits Claim as to Patient 39 is **DISMISSED without prejudice as**

**moot**, but only with respect to Plaintiffs' claim for payment of benefits;

(5)    To the extent CSMN II and Edwards assert the Benefits Claim for any

Patients other than Patients 27 and 39, the claim is **DISMISSED without**

**prejudice** for lack of statutory standing;[16]

(6)    The Benefits Claim **SURVIVES** to the extent the Provider Plaintiffs bring the

---

[15] The Court notes that Rule 21 permits to the Court to address misjoinder "[o]n motion or on its own" and "at any time."  Fed. R. Civ. P. 21.  Should subsequent developments in this case alter the Court's analysis of joinder, the Court will revisit the issue as appropriate.

[16] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6)."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Defendants do not argue that leave to amend would be futile with respect to these Provider Plaintiffs, and the Court respectfully declines to address the issue sua sponte.

claim as assignees of Patients 27 and 39;[17]

(7)    The Benefits Claim **SURVIVES** to the extent CSMN brings the claim as an assignee of Patients 1, 2, 4, 6–9, 11–16, 19, 21, 23, 25–26, and 29–37;

(8)    The MHPAEA Claim is **DISMISSED without prejudice** for lack of statutory standing to the extent it is asserted by the Provider Plaintiffs;

(9)    The Benefits and MHPAEA Claims are **DISMISSED without prejudice** and **with leave to amend** to the extent they are asserted by Patients 3, 5, 10, 18, 20, 22, 24, and 28;

(10)    The MHPAEA Claim is **DISMISSED without prejudice** and **with leave to amend** to the extent it is asserted by Patients 1, 2, 4, 6–9, 11–16, 19, 21, 23, 25–27, 29–37, and 39;

(11)    On or before September 23, 2025, Plaintiffs **MAY FILE** a Third Amended Complaint in which some or all of these Patients join, ratify, or substitute into this action.  No other amendments to the Second Amended Complaint are permitted without consent of the Parties or by order of the Court, after a formal motion for leave to amend;

(12)    The Parties shall **MEET** and **CONFER** and, on or before September 9, 2025, the Parties shall **FILE** a joint proposed Amended Scheduling Order. For any disputed scheduling issues, the joint proposed Amended Scheduling Order should include the Parties' separate positions; and

(13)    No further motions to dismiss will be permitted.  Any further dispositive issues should be raised in a motion for summary judgment.

---

[17] The Benefits Claim as to Patient 39 is limited to interest and attorney's fees.

DATED:  September 2, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge